UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MUSSIE TEWELDEMEDHIN,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM et al.,<br><br>Respondents. | CASE NO. C25-2363JLR<br><br>ORDER |

## I.  INTRODUCTION

Before the court is Petitioner Mussie Teweldemedhin's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and request for injunctive relief.  (Pet. (Dkt. # 1); Reply (Dkt. # 9).)  Respondents United States Department of Homeland Security ("DHS") Secretary Kristi Noem, United States Attorney General Pamela Bondi, Acting Director of United States Citizenship and Immigration Services ("USCIS") Todd Lyons, Acting Seattle Field Office Director United States Immigration and Customs

ORDER - 1

1 | Enforcement ("ICE") Laura Hermosillo (together, "Respondents") oppose the petition.
2 | (Resp. (Dkt. # 4).) The court has considered the petition, the parties' submissions, the
3 | relevant portions of the record, and the applicable law. Being fully advised, the court
4 | GRANTS Mr. Teweldemedhin's petition.

## II.   BACKGROUND

Mr. Teweldemedhin is a citizen of Eritrea presently detained at the Northwest ICE Processing Center in Tacoma, Washington. (Pet. ¶ 9.) An immigration judge previously issued a final order of removal and ordered Mr. Teweldemedhin removed to Eritrea on August 7, 2019. (*Id.* ¶ 23; *see also* Lambert Decl. (Dkt. # 8-3) ("Order of Removal").) DHS was unable to effectuate his removal to Eritrea and released him on an order of supervision ("OSUP") on May 6, 2020. (*Id.* ¶ 24; *see also* Lambert Decl. (Dkt. # 8-5) ("Order of Supervision").) On July 15, 2025, he was re-detained by ICE during a regularly scheduled check-in at the ICE office in Tukwila, Washington, and has remained in custody ever since. (*Id.* ¶ 25; *see also* Lambert. Decl. (Dkt. # 8-7) ("Notice of Revocation").)

Mr. Teweldemedhin entered the United States on or about January 24, 2019, and applied for asylum while in detention in Otay Mesa, California. (*Id.* ¶ 23.) On January 27, 2019, DHS issued an order of expedited removal. (*See* Lambert Decl. (Dkt. # 8-1) ("Notice of Removal"); *see generally* Order of Removal.) On May 6, 2020, DHS released Mr. Teweldemedhin on an OSUP. (Pet. ¶ 24; *see generally* Order of Supervision.) During the five years since his release from ICE custody, Mr. Teweldemedhin has complied with the conditions of his release. (*Id.* ¶ 25; *see generally* Resp.; *see generally* Arambula Decl.

ORDER - 2

(Dkt. # 7).) Additionally, Mr. Teweldemedhin has no criminal record in the United States or any other country. (*Id.* ¶ 27; *see generally* Resp.) On July 14, 2025, ICE revoked Mr. Teweldemedhin's OSUP because it allegedly had obtained a travel document to remove him to Eritrea. (*See generally* Notice of Revocation; *see also* Lambert. Decl. (Dkt. # 8-6) ("Travel Document") at 2 (showing that the Travel Document was valid from May 19, 2025, until November 18, 2025); *see also* Arambula Decl., ¶ 8.) On September 18, 2025, Mr. Teweldemedhin filed a motion to reopen his removal proceedings based on changed country conditions and changed personal circumstances. (*See* Smith Decl. (Dkt. # 1-2) at 2.) An immigration judge granted Mr. Teweldemedhin's request for an emergency stay of removal on October 10, 2025. (*See* Smith Decl. (Dkt. # 9-1) at 5, 8 ("Stay Order").)

On November 24, 2025, Mr. Teweldemedhin filed the instant Petition for Writ of Habeas pursuant to 28 U.S.C § 2241 challenging his immigration detention for violation of the Fifth Amendment's Due Process Clause. (*See generally* Pet.) Mr. Teweldemedhin argues that (1) Respondents' re-detention of Mr. Teweldemedhin violates due process because Respondents re-detained him without relevant changed circumstances and without an opportunity to be heard; and (2) Mr. Teweldemedhin's continued detention in immigration custody violates due process because there is no significant likelihood that he will be removed in the foreseeable future. (*See* Reply at 4-7.)

### III.    ANALYSIS

The court first considers the legal standard for detention of noncitizens during immigration proceedings and then turns to the parties' arguments concerning the present immigration habeas petition.

A. **Legal Standard for Detention of a Noncitizen During Immigration Proceedings**

The Immigration and Nationality Act ("INA") permits detention of noncitizens present in the United States during immigration proceedings. 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Although § 1225(b) requires mandatory detention for certain noncitizens "seeking entry" into the United States, it is a well-established maxim that "[n]o person shall be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.; *see also Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (setting forth that § 1225(b) "requires detention 'for a [removal] proceeding,'" and "that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum, . . . or until removal proceedings have concluded[.]"). The Supreme Court has held that the Fifth Amendment's guarantee of procedural protections unambiguously extends to noncitizens "in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citation omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."). Thus, "detainees are entitled to notice and an opportunity to be heard 'appropriate to the nature of the case.'" *Id*. (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

Administrative action to re-detain a noncitizen is similarly subject to due process safeguards to examine whether the government's asserted justification for a noncitizen's confinement "outweighs the 'individual's constitutionally protected interest in avoiding

physical restraint.'" *Zadvydas*, 533 U.S. at 690; *see id.* ("Freedom from imprisonment —from government custody, detention, or other forms of physical restraint —lies at the heart of the liberty that [the Due Process Clause] protects.") (citation omitted). Before the government may revoke an individual's release, due process guarantees notice and an individualized hearing before a neutral decisionmaker to assess risk. *See* 8 C.F.R. §§ 241.13(i)(3), (f) (setting forth the required procedure and factors the government must consider when determining whether to revoke a noncitizen's release); *id.* § 241.4(l) (providing that a noncitizen "will be afforded an initial informal interview promptly after his or her return to [] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation"); *see also Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time in a meaningful manner.") (citations and internal quotation marks omitted); *see also E.A. T.-B v. Wamsley*, 795 F.Supp.3d 1316, 1320 (W.D. Wash. Aug. 19, 2025) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.") (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Determining whether an administrative action provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 1320-21 (citing *Mathews*, 424 U.S. at 335).

When an individual's re-detention violates the Fifth Amendment, courts are permitted to order the individual released from detention to restore the status quo of liberty prior to the unlawful re-detention. *See Phetsadakone v. Scott*, No. C25-1678JNW, 2025 WL 2579569, *5 (W.D. Wash Sept. 5, 2025); *see also* 28 U.S.C. § 2241(c)(3) (providing that federal courts have the authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States").

**B.     Mr. Teweldemedhin's Re-Detention is Unlawful**

Mr. Teweldemedhin argues that his re-detention is unlawful because Respondents (1) did not show a significant likelihood that he would be removed in the reasonably foreseeable future, and (2) did not provide him with an informal interview as required by the regulations.  (*See* Pet. ¶¶ 50-57.)  Respondents argue that their decision to re-detain Mr. Teweldemedhin is lawful because (1) they "substantially" complied with the relevant regulations, and (2) Mr. Teweldemedhin is subject to mandatory detention under §1225(b).  (Resp. at 5-10.)  The court agrees with Mr. Teweldemedhin.

Respondents' decision to re-detain Mr. Teweldemedhin does not comply with the regulatory requirements of 8 C.F.R. §§ 241.13(i), 241.13(f), or 241.4(l).  First, Respondents failed to show a significant likelihood that Mr. Teweldemedhin would be removed in the reasonably foreseeable future.  Although Respondents obtained a travel document in May 2025, Respondents did not re-detain Mr. Teweldemedhin until July 14,

1  2025.  (*See* Travel Document at 2-3.)  Respondents held Mr. Teweldemedhin in ICE
2  custody for over two months, without effectuating his removal to Eritrea, before the
3  travel document subsequently expired.  (*See id.* (showing that the travel document
4  expired on November 18, 2025).)  Thus, Respondents fail to meet their burden to show
5  that Mr. Teweldemedhin's removal was imminent.

6        Second, Mr. Teweldemedhin's re-detention does not comply with the
7  requirements set forth by 8 C.F.R. §§ 241.13(i), 241.13(f), or 241.4(l).  It is undisputed
8  that Respondents revoked Mr. Teweldemedhin's OSUP and re-detained him without a
9  hearing before a neutral decisionmaker.  (*See* Pet. at 11; Resp. at 7.)  Because (1) Mr.
10 Teweldemedhin was arrested, detained, and remains in custody; (2) the risk of erroneous
11 deprivation of Mr. Teweldemedhin's liberty is high; and (3) the administrative procedure
12 required is a minimal burden on Respondents, the court finds that the *Mathews* factors
13 also weigh in favor of Mr. Teweldemedhin.  (*See Mathews*, 424 U.S. at 335.)  Thus, the
14 court concludes that Respondents failed to provide Mr. Teweldemedhin with the
15 minimum process constitutionally due.

16       Finally, Respondents argue that because an immigration court re-opened Mr.
17 Teweldemedhin's removal proceeding (*see* Stay Order), he is subject to mandatory
18 detention under § 1225(b).  (*See* Resp. at 9-10).  The court rejects this argument.  The
19 current status of Mr. Teweldemedhin's removal proceedings is immaterial to the court's
20 analysis and Respondents remain subject to an obligation to "effectuate [his] detention in
21 a manner that comports with due process."  *See E.A. T.-B.,* 795 F.Supp.3d at 1322.
22

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS Mr. Teweldemedhin's petition (Dkt. # 1) and, finding Mr. Teweldemedhin is entitled to immediate release from custody, ORDERS that a Writ shall issue. The court DIRECTS Mr. Teweldemedhin to file as soon as possible a proposed Writ of Habeas Corpus and to email a Word version to robartorders@wawd.uscourts.gov.

Dated this 22nd day of January, 2026.

JAMES L. ROBART
United States District Judge